In the Matter of ROYAL d'IBERVILLE CORPORATION d/b/a Royal d'Iberville Hotel.

KIMBROUGH INVESTMENT COMPANY, Plaintiff,

v.

ROYAL d'IBERVILLE CORPORATION Debtor-In-Possession, Defendant.

Bankruptcy No. 8002803SC.
Adv. No. 800191SC.

United States Bankruptcy Court, S. D. Mississippi, S. D.

Jan. 26, 1981.

Pat H. Scanlon, Jackson, Miss., for plaintiff.

Clyde Hurlbert, Biloxi, Miss., and Robert Trauner, Atlanta, Ga., for defendant.

## OPINION OF THE COURT

BARNEY E. EATON, III, Bankruptcy Judge.

On October 28, 1980, Kimbrough Investment Company, holding a first mortgage lien on the debtor-in-possession's property, filed a complaint to lift the automatic stay made operative by Section 362 of the Bankruptcy Code (11 U.S.C. § 362). Having heard the arguments of the parties and having reviewed the pleadings on file, the Court makes the following entry:

I.

1. The debtor-in-possession, Royal d'Iberville Corporation (hereinafter "debtor"), owns and operates the Royal d'Iberville Hotel in Biloxi, Mississippi.

2. The secured creditor, Kimbrough Investment Company (hereinafter "Kimbrough"), holds a validly perfected security

interest in the debtor's real property and the improvements thereon.

3. The debtor has defaulted in making payments in accordance with the terms of its mortgage held by Kimbrough. The unpaid principal balance, delinquent payments and other outstanding obligations of the debtor owed to Kimbrough as of December 29, 1980, result in an aggregate indebtedness of $4,350,870.60.

4. On October 24, 1980, within a year and a half after the debtor acquired the hotel, the debtor was compelled to file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and continued operations thereafter as debtor-in-possession.

5. The debtor's comptroller revealed that with respect to monthly operations the debtor's present gross income is in the amount of $160,000 to $200,000 a month and that operating expenses are currently over $200,000 a month.

6. On November 10, 1980, a preliminary hearing on Kimbrough's complaint for relief from the automatic stay and for adequate protection was held pursuant to 11 U.S.C. § 362(d). At this hearing, both parties were permitted to present evidence. By order of this Court dated November 13, 1980, the automatic stay was allowed to remain in effect, pending final hearing on Kimbrough's request for relief.

7. On December 11, 1980, an "agreed order" was entered, continuing the final hearing on Kimbrough's complaint for relief from the stay until December 29, 1980. In order to provide Kimbrough with adequate protection during the interim period, the agreed order between Kimbrough and the debtor contained certain contingencies. These contingencies were that either Beachcomber Development Corporation, a prospective purchaser of the debtor, deposit an additional amount of cash as earnest money and grant Kimbrough a lien on these funds, or that the debtor pay Kimbrough the sum of $49,750, being the interest payment due December 1, 1980. Neither of these contingencies were met.

8. On December 29, 1980, the final hearing on Kimbrough's complaint for relief from the stay was held. In addition, the debtor brought on for hearing an application to borrow funds pursuant to 11 U.S.C. § 364. The Court granted the debtor authority to borrow $150,000 within 15 days. Payment of this sum to Kimbrough would continue in effect the automatic stay of 11 U.S.C. § 362. Failure of the debtor to make such a timely payment to Kimbrough would result in the automatic stay being terminated without further order of the Court. The debtor did not make the payment to Kimbrough as required. Accordingly, the automatic stay terminated.

9. On January 19, 1981, this Court denied a motion to stay the order of December 29, 1980, pending appeal. Additionally, this Court ordered that a bond of $4,250,000 must be posted in accordance with Bankruptcy Rule 805 to stay the order of December 29, 1980, conditioned to guarantee to Kimbrough the payment of all sums owed by the debtor.

## II.

Bankruptcy Code Section 362(a) stays any act to enforce a lien against the property of a debtor. The grounds for relief from the stay are set forth in Section 362(d), which states:

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

Section 362(g) sets forth the allocation of the burden of proof, as follows:

"In any hearing under subsection (d) or (e) of this section concerning relief from

the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property: and

(2) the party opposing such relief has the burden of proof on all other issues."

Thus, the plaintiff, Kimbrough, has the burden of proof on the issue of the debtor's equity in the property, with the debtor having the burden on all other issues.

Kimbrough has asserted a lack of adequate protection of its interest in the property as grounds for relief from the stay.

Opinions as to what is adequate protection must be determined on a case-by-case basis and opinions will vary greatly from court-to-court because adequate protection is not defined in the Bankruptcy Code. Instead Section 361 offers three non-exclusive methods of providing adequate protection. Providing periodic cash payments, a replacement lien or granting such other relief "as will result in the realization of such entity of the indubitable equivalent of such entity's interest in such property" are the methods suggested.

■ Kimbrough's proof of value in this action to lift the stay was convincing. The testimony offered by Kimbrough's appraiser indicated that by reason of the debtor's lack of sufficient business in the past, the severe damage committed by Hurricane Fredrick, and the stigma of the present Chapter 11 bankruptcy proceeding, the fair market value of the property would be $4,250,000.

The testimony of the debtor's appraiser indicated that the value of the property was in excess of $9,000,000. These values were based upon "probable achievable occupancy" and conversion to either condominiums or into cooperatives. The debtor's appraiser, in fact, admitted that his estimate of the debtor's future occupancy rate was "considerably more than the Royal d'Iberville has ever done." [T. 130].

Thus, it appears that the testimony of the debtor's appraiser was based upon conjecture and mere speculation rather than existing realities. This Court must refuse to accept values of realty based on such conjecture.

■ This Court, therefore, concludes that since Kimbrough's claim of $4,350,870.60 is in excess of the collateral value of $4,250,000, the debtor has no equity in the secured property in question. Additionally, since the Court finds that the total value of the collateral is $4,250,000, it cannot be said that Kimbrough is adequately protected to the extent of its claim for $4,350,870.60. Moreover, the interest on the indebtedness will continue to mount at the rate of $49,375 per month. Furthermore, taxes, insurance and late charges will continue to accrue. Kimbrough should not be required to continue to pay these items when the value of its collateral is currently less than its claim. In these circumstances, the Court concludes that presently Kimbrough is not adequately protected. The debtor has not been able to pay Kimbrough any periodic payments for current interest. Nor has the debtor been able to offer any additional collateral or other items of value in satisfaction of its burden with respect to the issue of adequate protection, other than the property already subject to Kimbrough's security interest.

■ Because any reorganization of the debtor must be funded solely by utilization of the property in question, and based upon the poor past performance of this debtor, an "effective" reorganization as required by the Code is not attainable. Thus, this Court concludes that this property, under present ownership, simply will not generate sufficient income to fund an acceptable reorganization plan.

Accordingly, this Court concludes that the automatic stay must be lifted pursuant to Bankruptcy Code Section 362, because Kimbrough's secured claim is not adequately protected and because the debtor lacks equity in the collateral and no effective reorganization appears likely.

This opinion constitutes the findings of fact and conclusions of law pursuant to Bankruptcy Rule 752.